UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LESTER V. KERAN,

      Plaintiff,

  v.                                                   Civil Action 2:20-cv-2002
                                                      Judge Edmund A. Sargus, Jr.
                                                      Magistrate Judge Chelsey M. Vascura

DIRECTOR CHAMBERS-SMITH, *et al.*,

      Defendants.

**ORDER and REPORT AND RECOMMENDATION**

      Plaintiff, Lester V. Keran, an Ohio inmate who is proceeding without the assistance of counsel, brings this action against Defendant Director Chambers-Smith, in which he alleges the Defendant impermissibly discriminated on the basis of age when assigning inmates to various jobs in the Ohio Penal Industries ("OPI") sheet metal shop in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and 42 U.S.C. § 1983.  (*See* Pl.'s Compl., ECF No. 5.)  This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).  Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** this action

pursuant to §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim on which relief may be granted.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF No. 3.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that has only $123.94 in his prison account, which is insufficient to pay the filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number A149140) at Marion Correctional Institution ("MCI") is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

2

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## I.    STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

3

governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se*

4

complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.  BACKGROUND

Plaintiff alleges that he has worked in MCI's OPI sheet metal shop for over 20 years.  He alleges that under his previous manager, Joe Forster, he received consistently positive job evaluations while working as material handler.  However, when a new manager, Holley, took over, he began requiring inmates to be cross-trained on various positions, rather than working solely in a single position, as had been the previous practice.  Plaintiff's reluctance to take on new positions, with what he alleges was inadequate training, resulted in lower job evaluations from Holley.  Plaintiff alleges that Holley's cross-training program was designed to oust inmates from the sheet metal shop who had been working in the shop for too long.  Plaintiff alleges that he and several other older inmates were fired from the metal shop as part of an intentional effort to purge older workers from the shop.  (Compl. ECF No. 5.)

Plaintiff's employment with the sheet metal shop was terminated on December 24, 2019. He filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which closed its file on Plaintiff's charge on February 18, 2020, due to "[n]o employer/employee relationship."  (Right to Sue Letter, ECF No. 5, PAGEID #25.)

Plaintiff argues that his termination violated Title VII, the ADEA, and his Fourteenth Amendment due process rights when he was fired without a verbal or written warning.  He seeks compensatory and punitive damages as a result of his termination.

5

### III.    ANALYSIS

Plaintiff asserts claims under Title VII, the ADEA, and 42 U.S.C. § 1983 for violation of his due process rights under the Fourteenth Amendment. The undersigned will consider these claims in turn.

### A.    Plaintiff's Title VII and ADEA claims fail because these statutes do not cover prison employment.

Both Title VII and the ADEA govern actions only by "employers." *See* 42 U.S.C. § 2000e-2(a) (prohibiting unlawful employment practices by "employers"); 29 U.S.C. § 623 (same). The EEOC has issued guidance indicating that inmates performing prison jobs are not considered employees of an employer for the purpose of Title VII:

> That relationship [between the Charging Party inmate and the Respondent state correctional facility in which he was incarcerated] arose from the Charging Party's having been convicted and sentenced to imprisonment in the Respondent's correctional institution. The primary purpose of their association was incarceration, not employment. Consequently, the Respondent exercised control and direction not only over the Charging Party's work performance but over the Charging Party himself. The conditions under which he performed his job were, thus, functions of his confinement to the Respondent's institution under its control. While the Charging Party received monetary compensation for his work, that compensation was minimal and, arguably, the greater consideration was the opportunity to earn "good time" credits toward reducing his sentence. Finally, although the Charging Party was not required to work for the Respondent, his very job flowed from his incarceration and was dependent on his status as a prison inmate. Considering these circumstances as a whole, we are persuaded that the reality of the work relationship between the Respondent and the Charging Party was not one of employment. Therefore, we find that, while the Respondent is an employer within the meaning of the Act, the Charging Party was not an employee of the Respondent.

EEOC Dec. No. 86-7 (1986), 1986 WL 38836, at *3. Courts have cited this guidance numerous times to hold that prisoners, like Plaintiff, do not hold viable claims for employment discrimination under Title VII or the ADEA. *See*, *e.g.*, *Lacey v. Ohio Dep't of Rehab. & Corr.*, No. 18 CV 2006, 2019 WL 233619, at *2 (N.D. Ohio Jan. 16, 2019) ("An inmate working in a correctional institution does not have an employment relationship with the correctional

6

institution for purposes of Title VII."); *Gooding v. United States*, No. 3:09-CV-23, 2010 WL 925793, at *3–4 (E.D. Tenn. Mar. 9, 2010) ("[P]laintiff was not an employee of the [Bureau of Prisons] for purposes of Title VII."); *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991) ("[P]laintiff is not an 'employee' under either Title VII or the ADEA because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee.").

Because Plaintiff's relationship with the state-run correctional facility's sheet metal shop arose out of his status as an inmate, not as an employee, he fails to state a claim for employment discrimination under either Title VII or the ADEA. Accordingly, it is **RECOMMENDED** that Plaintiff's Title VII and ADEA claims be **DISMISSED**.

**B.    Plaintiff's due process claim fails because he does not have a liberty interest in his prison job.**

Plaintiff has also failed to plausibly allege a due process claim. More specifically, Plaintiff's allegations are insufficient to implicate federal due process concerns because he has not alleged that his employment termination amounted to a deprivation of a constitutionally protected interest.

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The United States Court of Appeals for the Sixth Circuit has held repeatedly that prisoners do not have a constitutional right to a prison job. *E.g.*, *Dobbins v.*

7

*Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011) ("[Plaintiff inmate] has no constitutional right to prison employment because the loss of his position does not impose an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established, however, that no prisoner has a constitutional right to a particular job or to any job."); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) ("A prisoner has no constitutional right to prison employment or a particular prison job.").

Because Plaintiff's termination from his materials handler position at the sheet metal shop does not impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," Plaintiff's due process claim must fail. *Sandin*, 515 U.S. at 484. Accordingly, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED**.

### IV. DISPOSITION

For the reasons set forth above, Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (ECF No. 3) is **GRANTED**. Further, Plaintiff's Motion for Extension of Time to File a Lawsuit under Title VII for Age Discrimination in Employment Act (ECF No. 1) and Plaintiff's Motion for Extension of Time to File Amended Motion to Proceed *In Forma Pauperis* (ECF No. 8) are **DENIED AS MOOT**. In addition, it is **RECOMMENDED** that the Court **DISMISS** this action pursuant to §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim on which relief may be granted and that Plaintiff's Motion to Appoint Counsel (ECF No. 4) be **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE